United States Court of Appeals
**FOR THE EIGHTH CIRCUIT**
No. 96-4214

| | | |
|---|---|---|
| E.S., a disabled minor; Jeanne Stein, parent and legal guardian, | * * * | |
| Appellants, | * * | |
| v. | * * * | Appeal from the United States District Court for the District of Minnesota. |
| Independent School District, No. 196, Rosemount-Apple Valley-Eagan; Bruce Johnson, in his official capacity as the Commissioner of the Minnesota Department of Children, Families and Learning; State Board of Education for the State of Minnesota; State Board of Teaching for the State of Minnesota, | * * * * * * * * * | |
| Appellees. | * * | |

_____

Submitted: October 22, 1997
Filed: January 30, 1998

_____

Before BEAM, FLOYD R. GIBSON, Circuit Judges, and WEBB[1], United States Chief
    District Judge.

_____

_____

    [1]The Honorable Rodney S. Webb, United States Chief District Judge for the
District of North Dakota, sitting by designation.

BEAM, Circuit Judge.

E.S., a handicapped child within the meaning of the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400-1491,[2] and her mother, Jeanne Stein, appeal the district court's[3] dismissal of their IDEA claims against Independent School District Number 196 and various state defendants. Because we find that E.S. was receiving a free appropriate public education as required by the IDEA, we affirm.

I.    BACKGROUND

E.S. suffers from dyslexia, a handicap entitling her to special education services. See 20 U.S.C. §§ 1401(a)(1)(A)(i), 1401(a)(15). Independent School District Number 196 (the District) began providing E.S. with special education services in 1992. At that time, as E.S. was entering the fourth grade, testing indicated that E.S.'s broad reading skills were at a 3.0 grade-level equivalent, her reading comprehension was at a 3.2 grade level, her broad written language was at a 2.7 grade level and her writing skills were at a 2.1 grade level. Three years later, as she prepared to enter the seventh grade, E.S. was reassessed. The reassessment tests indicated that E.S.'s broad reading skills were now at a 3.8 grade equivalent, her reading comprehension had improved to a 5.1 grade equivalent, her broad written language was at a 3.1 grade level and her

---

[2]In June 1997, Congress amended the IDEA. However, since the events relevant to this litigation occurred prior to the Amendments' effective date, we address only the pre-1997 IDEA. See Individuals with Disabilities Education Act Amendments of 1997, Pub. L. No. 105-17 § 201, 111 Stat. 156 (effective date).

[3]The Honorable Michael J. Davis, United States District Judge for the District of Minnesota.

writing skills were 3.8 grade equivalent. After this assessment, Ms. Stein and the District agreed that E.S. would be provided extended services during the summer of 1995. That summer E.S. received one-to-one tutoring using the Orton-Gillingham instructional technique.[4] Ms. Stein was apparently pleased with the progress she perceived from those tutoring sessions, because she requested that E.S.'s individualized education plan (IEP)[5] specify that she receive one-to-one instruction using the Orton-Gillingham method during the 1995-96 school year.[6] The District declined to mandate only the Orton-Gillingham method in the IEP, arguing that E.S.'s teachers should be able to select from a variety of teaching methodologies, including Orton-Gillingham. Furthermore, the District did not agree that E.S. needed exclusively one-to-one tutoring, and proposed placing her in "pull-out" classes of 3-5 students who were at similar educational levels. When the District refused to modify E.S.'s IEP as requested, Ms. Stein requested a due process hearing. The level I (local review) Hearing Officer received evidence for two days. The hearing officer, relying on the testimony of E.S.'s tutor, found that E.S. could learn either with one-to-one instruction or in a small group of three to five students, as long as those students were at E.S.'s achivement level. The hearing officer therefore refused to order the school to provide one-to-one instruction using Orton-Gillingham. Ms. Stein appealed to a level II (the

---

[4]The Orton-Gillingham instructional technique is described as "a multi-sensory approach used to instruct students with learning disabilities. As such, it is one of several available methods used to provide instruction."

[5]The IDEA requires school districts to formulate IEPs for each of its disabled students. Those plans are detailed written statements arrived at by a multi-disciplinary team summarizing the child's abilities, outlining the goals for the child's education and specifying the services the child will receive. See 20 U.S.C. § 1401(a)(20)

[6]While Ms. Stein originally raised numerous objections to the IEP proposed for 1995-96, her complaints have now been narrowed to these two requests.

state educational agency) Hearing Review Officer. The Hearing Review Officer concluded that "[t]his record does not indicate any substantive violations of [the] IDEA" and denied Ms. Stein's requests.

Their administrative remedies exhausted, E.S. and Ms. Stein filed a complaint in federal district court. Along with the District, they named the State Board of Education, the State Board of Teaching, and the Commissioner of the Minnesota Department of Children, Families and Learning (collectively "the State Defendants") as defendants who had violated the IDEA by refusing to provide one-to-one instruction using the Orton-Gillingham method and by refusing to develop an IEP including those services. The complaint also alleged violations of the Americans with Disabilities Act, 42 U.S.C. § 12132, the Rehabilitation Act, 29 U.S.C. § 504, and the Minnesota Human Rights Act, Minn. Stat. § 363. The parties agreed to sever the IDEA claims from the rest of the complaint and after a severance order was entered, both sides moved for judgment on the record. The district court held that E.S. had failed to establish that one-to-one instruction using Orton-Gillingham was necessary for her to receive educational benefit. Accordingly, it granted the defendants' motions for judgment on the record. E.S. and Ms. Stein appeal.

## II.    DISCUSSION

### A.    Jurisdiction

We first address the District and the State Defendants' joint motion to dismiss E.S.'s appeal for lack of jurisdiction.  They argue that since E.S.'s ADA and other claims are still pending, the order disposing of the IDEA claim is not a final, appealable order.

When a single claim is severed from a lawsuit, it proceeds as a discrete, independent action and the trial court may render final, appealable judgment on the severed claim, notwithstanding the continued existence of unresolved claims in the remaining action.  See Fed. R. Civ. P. 21; United States v. O'Neil, 709 F.2d 361, 368 (5th Cir. 1983);  see also The Toro Co. v. Alsop, 565 F.2d 998, 1000 (8th Cir. 1977) (district court has power under Rule 21 to sever one count of complaint from others). The district court's order concerns only the severed IDEA claim and was final, notwithstanding the lack of a final order on the other claims.  Accordingly, we deny the motion to dismiss for lack of appellate jurisdiction.

### B.    IDEA Claim

The IDEA provides federal funds to assist states in educating disabled children. In order to receive this money, states must provide a "free appropriate public

education" to all of its disabled students by formulating IEPs tailored to their unique needs. 20 U.S.C. § 1412. The Supreme Court has determined that a school meets its

obligation if the disabled student's IEP is "reasonably calculated to enable the child to receive educational benefits." Hendirck Hudson Dist. Bd. of Ed. v. Rowley, 458 U.S. 176, 207 (1982).

Because judges are not trained educators, judicial review under the IDEA is limited. When reviewing outcomes reached through the administrative appeals procedures established by 20 U.S.C. §§ 1415 (b) and (c), the district court must give "due weight" to the results of those proceedings, resisting any impulse to "substitute [its] own notions of sound educational policy for those of the school authorities." Rowley, 458 U.S. at 206. At the appellate level, the question of an IEP's adequacy is a mixed question of law and fact, reviewed de novo. See Fort Zumwalt Sch. Dist. v. Clymes, 119 F.3d 607, 611 (8th Cir. 1997). In the absence of a mistake of law, the district court's answer to this mixed fact/law question is reviewed for clear error. See Yankton Sch. Dist. v. Schramm, 93 F.3d 1369, 1374 (8th Cir. 1996). At the administrative level, the District clearly had the burden of proving that it had complied with the IDEA. See Clyde K. v. Puyallup Sch. Dist. No.3, 35 F.3d 1396, 1398-99 (9th Cir. 1994). On appeal, the party challenging the outcome of state administrative hearings has the burden of proof. See id.; Board of Educ. of Community Consolidated Sch. Dist. No. 21 v. Illinois State Bd. of Educ., 938 F.2d 712, 716 (7th Cir. 1991).

In this case, contrary to counsel's representation at oral argument, the hearing review officer made findings of fact that E.S. was receiving a free appropriate public education without one-to-one tutoring under the Orton-Gillingham method. E.S. and Ms. Stein dispute this conclusion, pointing out that despite three years of special

education by the District, E.S. still lagged behind grade-level achievement in many critical skills. However, the IDEA does not require the District to provide E.S. the best possible education or to achieve outstanding results. See Fort Zumwalt, 119 F.3d at 613. Requiring the District to change methodologies based on Ms. Steins's preferences "would be creating the potential that a school district could be required to provide more than one method . . . for different students whose parents had differing preferences." Petersen v. Hastings Pub. Sch., 31 F.3d 705, 708 (8th Cir. 1994). As long as a student is benefitting from her education, it is up to the educators to determine the appropriate methodology. See Rowley, 458 U.S. at 208. Although E.S. did not read as well as her non-disabled peers, her record indicates that she was making progress and that the 1995-96 proposed IEP would have provided educational benefit to her. We therefore find that neither the District nor the State Defendants violated the IDEA, and that the district court was correct in granting judgment on the record to all defendants.

Finally, E.S. and Ms. Stein appeal the district court's denial of their motion to supplement the administrative record. Although the IDEA permits a court reviewing the administrative process to admit additional evidence, "a party seeking to introduce additional evidence at the district court level must provide some solid justification for doing so." Independent Sch. Dist. No. 283 v. S.D., 88 F.3d 556, 560 (8th Cir. 1996) (quotation ommitted). The district court found that E.S. and Ms. Stein did not provide such "solid justification" and we can find no error in that ruling.

We have carefully considered the remainder of the appellants' arguments, and find them to be meritless.

## III. CONCLUSION

For the foregoing reasons, the decision of the district court is affirmed.

A true copy.

    Attest:

        CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.