225 F.Supp.2d 1149 (2002)
Joel Spencer REESE, by his parents and next friends, Luann Reese and Joel Reese, Plaintiffs,
v.
BOARD OF EDUCATION OF BISMARCK R-V SCHOOL DISTRICT, Defendant.
No. 4:99CV1768SNL.
United States District Court, E.D. Missouri, Eastern Division.
September 30, 2002.
*1150 John J. Ammann, St. Louis University Housing Lw Clinic, St. Louis, MO, Thomas E. Kennedy, III, Alton, IL, for Plaintiffs.
Robert J. Tomaso, Blackwell, Sanders, Peper, Martin LLP, St. Louis, MO, John F. Brink, Tueth & Keeney, St. Louis, MO, Teri B. Goldman, Chesterfield, MO, for Defendant.

MEMORANDUM
LIMBAUGH, Senior District Judge.
Plaintiffs Reese filed this action seeking judicial review of an administrative hearing panel's decision regarding the placement and provision of special education services for plaintiff Joel Spencer Reese (hereinafter referred to as "Spencer") pursuant to the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 et. seq. This matter is now before the Court on defendant Bismarck R-V School District's (hereinafter referred to as "the District") motion for judgment on the administrative record, or in the alternative, for summary judgment (#23) and plaintiffs' motion for judgment on the administrative record (#26).[1] In connection with *1151 these two (2) dispositive motions, the parties have filed evidentiary motions: defendant's motion/request for the Court to consider additional evidence (# 27) and plaintiffs' motion to strike (# 36). The parties have filed responsive pleadings to all motions presently pending before the Court. After careful review of the extensive briefing in this case, the Court considers the matter ready for disposition.[2]
Plaintiff Spencer[3], at the time of the filing of his complaint, is a ten (10) year old boy with a disability as defined by the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 et seq.[4] As a first grader, in the defendant District, during the 1995-96 school year, plaintiff was identified as a student with a disability eligible for services under the IDEA. Plaintiff had been hospitalized over the summer of 1995 at the Hawthorn Psychiatric Hospital prior to his return to school in September 1995. Based upon the diagnosis of plaintiff's emotional and mental illnesses received from Hawthorn, defendant developed an interim "individualized education plan" (IEP) and Behavior Management Plan for plaintiff.
From January 1996 through February 1996, plaintiff was again hospitalized at Hawthorne at his parents' request. Following his discharge, plaintiff returned as a first grader for the remainder of the school year. Plaintiff remained in the defendant District as a second grader for the 1996-97 school year. An IEP and Behavior Management Plan existed and remained in effect for the plaintiff.
Plaintiff was promoted to third grade for the 1997-98 school year. The IEP in effect at this time called for a shortened school day at his elementary school within the defendant District. However, plaintiff was removed from school and admitted again to Hawthorne by his parents[5]. Following his discharge from Hawthorne, plaintiff's parents admitted him to the Edgewood Children's Center[6] on October 23, 1997. This admission was authorized by the Missouri Department of Mental Health at the plaintiff's parents' request. During his four-month stay at Edgewood, the defendant District funded the educational portion of the placement, and the Missouri Department of Health (DMH) funded the residential costs. During this period, defendant *1152 District did not develop an IEP for the plaintiff.
After his discharge from Edgewood, plaintiff returned to the defendant District. A new IEP was developed and implemented which provided the plaintiff with homebound services beginning March 9, 1998. However, plaintiff began experiencing problems and the homebound services, upon plaintiff's parents' request, were terminated on April 23, 1998. The District did not consider plaintiff for extended school year services. No further educational services were provided to the plaintiff by the defendant District.
On May 11, 1998, plaintiff's parents filed a request with the Missouri Department for Elementary and Secondary Education (DESE) for a due process hearing claiming that the defendant District had failed to provide appropriate special education services to plaintiff.
On August 5, 1998 (while the due process hearing request was pending), an IEP meeting for plaintiff was held to determine plaintiff's placement for the 1998-99 school year. Plaintiff's parents, accompanied by an advocate, attended the meeting. At the conclusion of this meeting, although preferring placement in the Jefferson County day treatment program, the District agreed to "day treatment" placement at Edgewood with certain conditions: the District would pay for the educational portion of the placement if the DESE would provide funding for the apartment and transportation costs of the plaintiff's parents. DESE failed to provide such assurances of funding. In light of this, the District decided to notify the plaintiff's parents of its decision to place plaintiff in a day treatment program operated by the Jefferson County Special Education Cooperative. The plaintiff and his parents rejected this placement and plaintiff was unilaterally placed by his parents back at Edgewood Children's Center for the 1998-99 school year.
Upon admission to Edgewood's day treatment program, Spencer was placed in a classroom which housed at any given time up to a maximum of ten (10) other children ranging in age from nine (9) to twelve (12). All the children in this classroom had severe emotional behavioral disorders; some also had any number of learning disabilities. Other than the teacher (Ms. Alison Knaup), there is a regular classroom aid, and sometimes a volunteer that "floats" among the classrooms. For most of the year, the classroom was set up as a "traditional classroom" with children working individually or in groups. In March 1999, the classroom structure was changed to a "centers" format with five (5) academic centers and five (5) "fun" centers set up around the perimeter of the room. The children in the classroom are all at different achievement levels, so each child's academic work is individualized to his or her's needs, when necessary. A typical school day (incorporating the use of centers) is as follows: school begins at 8:45 a.m.; children have free time until 9:15 a.m.; then they have journal-writing time; then they start centers and work at their respective centers until noontime. Following centers, they have lunch (in the basement of the same building that houses the classroom), then a short recess. Following recess, the children engage in a group activity such as having a book read to them. After grouptime, the children have physical education, then snack time. School lets out at 3:15 p.m. During the week, Spencer would see the on-site therapist twice a week for individual therapy and once a week for group therapy.
Meanwhile, a seven-day hearing was held before a three-member panel in July and August 1999. By way of letter, dated *1153 January 26, 1999, the plaintiff and his parents raised the issues that they wanted considered by the panel and the relief sought. The plaintiff and his parents contended that:
1) the defendant District denied the plaintiff a free appropriate public education when it failed to develop an IEP which was designed to meet the plaintiff's needs, more specifically when it failed to place the plaintiff in an appropriate program during the 1996-97, 1997-98, and 1998-99 school years which could provide the services and support needed by the plaintiff in order to benefit from his instructional program; and
2) the defendant District denied the plaintiff a free appropriate public education when it failed to provide the plaintiff with appropriate program and services during the period between his discharge from the Edgewood Children's Center in late February 1998 and his admission to the Edgewood Children's Center in September 1998.
The relief sought by plaintiff and his parents included:
1) a finding that the plaintiff's current placement in the day treatment program at the Edgewood Children's Center is appropriate;
2) requiring the defendant District to develop an IEP incorporating the day treatment program at the Edgewood Children's Center and maintaining this program and placement for at least one year, or until the plaintiff's medical condition significantly changes and/or until the defendant District develops an appropriate educational program and placement for the plaintiff;
3) requiring the defendant District to reimburse the parents for their costs of tuition at the Edgewood program, for their transportation expenses to the Edgewood program from their home in Bismarck and from their apartment in St. Louis County, and for their expenses of rent and utilities for their apartment in St. Louis County commencing April 1, 1999, if these expenses are not authorized to be paid by the Missouri Department of Mental Health;
4) ordering the defendant District to pay the foregoing tuition costs, transportation expenses, rent and utility expenses during that time in the future that the plaintiff attends the Edgewood program; and
5) requiring the defendant District to provide the appropriate compensatory educational services for the plaintiff because of the denial of appropriate services in the past.[7]
After the conclusion of the hearing, the plaintiff raised additional issues in his post-hearing brief which related to alleged procedural violations by the defendant District. These post-hearing claims included:
1) that the District's IEP team failed to understand the significance and impact of the plaintiff's illnesses;
2) that the District failed to provide an IEP for the plaintiff during the Edgewood diagnostic placement;
3) that the plaintiff's IEP which provided for homebound instruction from March 9, 1998 through April 23, 1998 provided the plaintiff with a free and appropriate public education (FAPE);
4) that the District failed to provide any educational services for three weeks (the remainder of the school year) following the termination of the homebound services;

*1154 5) that the District failed to consider the plaintiff for extended school year services for the summer of 1998;
6) that the District failed to give the plaintiff's parents proper notice of the August 5, 1998 IEP meeting in that the notice did not indicate that representatives of the District's proposed placement would be present at the meeting;
7) that the District failed to consider the opinion of the plaintiff's psychiatrist at the August 5, 1998 meeting;
8) that the District never made a "firm" commitment to a placement decision in violation of the IDEA;
9) that the District's proposed placement violates the IDEA's "closest-to-home" rule; and
10) that District's proposed placement of the plaintiff failed to consider the potentially harmful effect of said placement on the plaintiff.[8]
On October 19, 1999 the panel tendered its decision. In its decision, the hearing panel found that the District had provided the plaintiff with a fair and appropriate public education for the 1996-97 school year, as well as for most of the 1997-98 school year.[9] Exhibit A, pgs. 7-8. It further found that the IEP which provided the plaintiff with homebound instruction from March 9, 1998April 23, 1998 constituted a FAPE. Exhibit A, pg. 8. It further found that the District had failed to consider the plaintiff for the Extended School Year Program during the summer of 1998. Furthermore, it found that neither the District's proposed placement of the plaintiff in the day treatment program at the Jefferson County Cooperative Program nor the parent's proposed placement of plaintiff in the day treatment program at the Edgewood Children's Center was appropriate because both programs would remove plaintiff from his home school district and neither program has sufficient facilities for physical education. Exhibit A, pgs. 7-8. Finally, it found that plaintiff and his parents were not entitled to reimbursement for their costs of tuition, rent, utilities, or transportation for the plaintiff's placement at Edgewood Children's Center; however, plaintiff was entitled to certain compensatory services for the District's failure to provide educational services for the three (3) week period in 1998 and failure to consider the plaintiff for the Extended School Year Program in the summer of 1998. Exhibit A, pg. 9.[10]
Although in their original complaint before this Court the plaintiffs object to the Hearing Panel's decision regarding the educational services provided to plaintiff Spencer for the academic years 1996-97, 1997-98, and 1998-99; it appears to the Court that the plaintiffs have narrowed the scope of their requested judicial review to only the Hearing Panel's decision regarding the provision of educational services to Spencer during the 1998-99 school year. Pursuant to their dispositive motion, plaintiffs contend that the Hearing Panel erred when it determined that placement at Edgewood was inappropriate; thereby, denying plaintiffs reimbursement of tuition *1155 and other related costs for the 1998-99 school year. They further contend that the Hearing Panel erred when it decided that Spencer was entitled to eight (8) weeks of compensatory instruction in a self-contained classroom within defendant District; instead, plaintiffs argue that Spencer should receive such instruction in a self-contained classroom outside of the defendant District.
Defendant District, on the other hand, does not appeal the Hearing Panel's determination that its proposed placement of Spencer, for the 1998-99 school year, in the day treatment program at the Jefferson County Special Education Cooperative was inappropriate. Instead, it contends that plaintiffs are not entitled to reimbursement for their unilateral placement of Spencer at Edgewood because the Hearing Panel was correct when it found that placement at Edgewood was also inappropriate. Furthermore, in response to the plaintiffs' assertion that the eight (8) weeks of compensatory education should be provided in a self-contained classroom outside of the defendant District, defendant offers evidence to support the Hearing Panel's finding that the District could provide such services to Spencer as ordered by the Hearing Panel.
The IDEA requires that a disabled child be provided with access to a "free and appropriate public education."[11] 20 U.S.C. § 1400© and (d)(1)(A); see also, Board of Education v. Rowley, 458 U.S. 176, 203, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982); Jasa v. Millard Public School District No. 17, 206 F.3d 813, 815 (8th Cir. 2000); Gill v. Columbia 93 School District, 217 F.3d 1027, 1034 (8th Cir.2000); Fort Zumwalt School District v. Clynes, 119 F.3d 607, 610 (8th Cir.1997). All children with disabilities "who, by reason thereof, need special education and related services" are covered by the IDEA's protections. 20 U.S.C. § 1401(a)(1)(A). "Special education" is "specially designed instruction ... to meet the unique needs of a child with a disability", while "related services" include physical therapy, transportation, and other supportive services, "as may be required to assist a child with a disability to benefit from special education ...". 20 U.S.C. § 1401(a)(16) and (17); Moubry v. Independent School District 696, Ely, Minnesota, 9 F.Supp.2d. 1086, 1097 (D.Minn.1998). The IDEA's requirement of providing a FAPE "is satisfied when the state provides personalized instruction with sufficient support to benefit educationally from that instruction; the requirement of a FAPE does not require the state to maximize each child's potential commensurate with the opportunity provided to non-disabled children." Breen v. St. Charles R-IV School District, et. al., 2 F.Supp.2d. 1214, 1221 (E.D.Mo.1997), aff'd 141 F.3d 1167, 1998 WL 172602 (8th Cir.1998)(unpublished decision); see also, Rowley, 458 U.S. at 200, 102 S.Ct. 3034.[12]
*1156 The IDEA provides funds to the states to assist them in providing special education and related services to their disabled children. The IDEA requires school districts to identify children requiring special education services and to formulate "individualized education plans"[13] for each of its disabled students. The IEP is a detailed written statement comprised by a multidisciplinary school district team summarizing the disabled student's abilities, capabilities, educational goals to be met, and the methodology to meet those goals. The IEP must include the child's present educational level and goals, specific services to be provided, needed transition services, and criteria for progress evaluation. 20 U.S.C. § 1420(a)(20); E.S. v. Independent School District, No. 196, Rosemount-Apple Valley-Eagan, et al., 135 F.3d 566, 568 n. 5 (8th Cir.1998); Moubry, at 1097. The standard by which to adjudge whether the IEP is providing a FAPE under the IDEA is whether it offers a "basic floor of opportunity" by providing instruction and supportive services reasonably calculated to provide some educational benefit to the child. Rowley, 458 U.S. at 200-201, 102 S.Ct. 3034. Thus, pursuant to the IDEA and Rowley, supra., an appropriate placement should: 1) be designed to meet the special needs of the child; 2) be designed to provide the child with "some educational benefit"; and 3) conform with the child's IEP.
Any parent who disagrees with his or her's child's IEP may seek review of the school district's actions through a state administrative hearing. 20 U.S.C. § 1415(b)(2). Under the IDEA, this administrative process is governed by state law. Independent School District No. 283 v. S.D., 88 F.3d 556, 560 (8th Cir.1996); Moubry, at 1097.[14] This administrative process is subject to court review. 20 U.S.C. § 1415(e).[15]
The IDEA permits aggrieved parties (parents or school district) to seek review of an administrative hearing panel's decision by bringing a civil action in state court or federal district court. 20 U.S.C. § 1415(i)(2)(A). Judicial review under the IDEA is quite limited since federal judges *1157 (as well as state judges) are not trained educators, and courts generally are not charged with making educational policy. See, Blackmon v. Springfield R-XII School District, et al., 198 F.3d 648, 655 (8th Cir.1999); E.S. v. Independent School District No. 196, at 569; Moubry, at 1098. When considering an appeal under the IDEA, "the court shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(B). A federal court should give "due deference" to the administrative hearing panel proceedings and should not substitute its judgment on educational policy and services for that of the hearing panel. Gill, at 1037; see also, Rowley, 458 U.S. at 206, 102 S.Ct. 3034; Independent School District No. 284 v. A.C., 258 F.3d 769, 773-74 (8th Cir.2001). "The district court must give `due weight' because the administrative panel had an opportunity to observe the demeanor of the witnesses and because the court should not substitute its own notions of sound educational policy for those of the school authorities that they review." Strawn v. Missouri State Board of Education, 210 F.3d 954, 958 (8th Cir. 2000). On appeal, the party challenging the outcome of the state administrative hearing(s) has the burden of proof. E.S. v. Independent School District, No. 196, 135 F.3d 566, 569 (8th Cir.1998).
The "due deference" accorded to the administrative proceedings ordinarily means that a federal court should defer to the administrative panel's judgment in building the record; however, the court does have the discretion to hear additional evidence if the requesting party provides "some solid evidence" for expanding the record. See, Gill, at 1037; E.S. v. Independent School District, No. 196, at 569.
In some instances where the parents strongly disagree with the school district's IEP and believe that the school district is failing to provide a FAPE for their child, they may choose to place the child in a private school and seek reimbursement for educational services from the school district. However, parents who unilaterally decide to change their child's placement from public to private school do so at their own financial risk that they will not receive reimbursement for the cost of a private education. See, Florence County School District Four v. Carter, 510 U.S. 7, 14-16, 114 S.Ct. 361, 126 L.Ed.2d 284 (1993); School Committee of the Town of Burlington v. Department of Education, 471 U.S. 359, 372-74, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985); Gill, at 1037; Schoenfeld v. Parkway School District, 138 F.3d 379, 381 (8th Cir.1998); Fort Zumwalt School District v. Clynes, 119 F.3d 607, 611-12 (8th Cir. 1997); Independent School District No. 283 v. S.D., 88 F.3d 556, 561 (8th Cir.1996); see also, 20 U.S.C. § 1412(a)(10)(C). Reimbursement for private education costs are appropriate only when 1) placement in the school district is inappropriate because the school district has failed to provide the child with a FAPE; and 2) the private school placement is appropriate. Florence County School District, supra.; Burlington, supra.; Gill, at 1037; Schoenfeld, at 382; Clynes, at 611-12.
Thus, given the posture of the case before this Court, three (3) issues are before the Court for resolution:
1) Whether the Hearing Panel erred when it found the plaintiffs' unilateral placement of Spencer at Edgewood to be inappropriate;
2) whether the Hearing Panel erred when it found that the appropriate placement for Spencer was in a self-contained classroom with a therapeutic *1158 component within the defendant school district; and
3) whether this Court should consider additional evidence by the defendant when reviewing the Hearing Panel's decision.
The record before this Court contains evidence of Spencer's performance in defendant's elementary school[16], at Edgewood, and at home. The hearing transcript is approximately 1500 pages long consisting of the testimony concerning Spencer's performance at school, at Edgewood, and at home by Mrs. Reese and by teachers and therapists who had worked with him over the years. Witnesses testified at great length about the various types of teaching instruction which had been proposed and tried with Spencer, and the various disciplinary methods utilized with Spencer. All witnesses were subject to cross-examination and to questioning by attorneys for the parties and by the Hearing Panel members. Several hundred exhibits were made a part of the administrative record, including but not limited to, Spencer's IEPs, results of diagnostic tests on Spencer by his own therapists and Edgewood and Hawthorne staff, and academic standardized tests concerning Spencer's academic progress.
The Hearing Panel found that placement of Spencer at Edgewood was an inappropriate placement because such placement removed Spencer from the "mainstream" or "least restrictive environment" for his education; required him to reside in St. Louis without his family (i.e., his father and/or siblings); and required him to travel twenty (20) minutes each way to school. The Hearing Panel further found that Edgewood lacked the facilities for physical education, and that Edgewood's program failed to adequately balance Spencer's academic and emotional needs. Plaintiffs' Exhibit AHearing Panel Decision. Plaintiffs assert that the Hearing Panel's decision regarding placement at Edgewood should be disregarded because the Panel "misapplied" the strict standards of the IDEA. They contend that under Florence County, supra a parent's private placement does not have to meet the "stringent" standards of the IDEA. The plaintiffs have misconstrued the holding of Florence County and have failed to recognize the standard for reimbursement consistently applied by the Eighth Circuit.
In Florence County, supra, the Supreme Court specifically stated the scope of its decision: "This case presents the narrow question whether Shannon's parents are barred from reimbursement because the private school in which Shannon enrolled did not meet the § 1401(a)(18) definition of a `free appropriate public education.' We hold that they are not, because § 1401(a)(18)'s requirements cannot be read as applying to parental placements." Florence County, 510 U.S. at 13, 114 S.Ct. at 365.[17] It is clear that all Florence County holds is that a private school's failure to meet state education standards, as provided for in § 1401(a)(18), *1159 is not a bar to reimbursement. It did not hold that a private school placement is to be reviewed absent all consideration of the IDEA. In fact, the Florence County Court reiterated the admonition of Burlington, supra, that parents who "unilaterally change their child's placement during the pendency of review proceedings, without the consent of state or local school officials, do so at their own financial risk.", Burlington, 471 U.S. at 373-74, 105 S.Ct. 1996, and furthermore, stated that "[t]hey are entitled to reimbursement only if a federal court concludes both that the public placement violated the IDEA and that the private school placement was proper under the Act." Florence County, 510 U.S. at 15, 114 S.Ct. at 366. Thus, the IDEA's requirements, other than those set forth in § 1401(8), are applicable to a private school placement when determining whether said placement is appropriate. This standard has been consistently applied by the Eighth Circuit when reviewing reimbursement issues in IDEA cases. See, Blackmon, at 658(in order to obtain reimbursement for private school placement, parent plaintiffs must demonstrate that defendant school district's proposed IEP would not have provided child with a FAPE and that the private school's program "complied with the IDEA"); Fort Zumwalt, at 611 ("Parents who believe their child will not receive an educational benefit under an IEP may enroll the child in a private school and later obtain reimbursement for those costs if a federal court concludes (1) the school district did not offer a free appropriate public education; and (2) the private school placement complied with the IDEA."); Independent School District No. 283 v. S.D., at 561 (parents entitled to tuition reimbursement for placement of child in private school "only if public school placement violated IDEA and placement at Groves was proper under the Act."); Carl D., et al. v. Special School District of St. Louis County, Missouri, 21 F.Supp.2d. 1042, 1058 (E.D.Mo.1998)(plaintiff parents are not eligible for reimbursement of the costs and expenses in connection with sending child to private school unless home district school failed to provide a free appropriate public education and child's placement at private school was appropriate under IDEA).
The IDEA enacted a strong preference that handicapped children attend regular classes with children who are not handicapped. See, 20 U.S.C. § 1412(5); Gill, at 1034; Blackmon, at 661; Independent School District No. 283 v. S.D., at 561; Carl D, at 1058. This preference is normally articulated as "mainstreaming" or educating the child in the "lease restrictive environment". This preference creates a presumption in favor of a student's placement in public schools. Independent School District No. 283 v. S.D., at 561; see, Mark A. v. Grant Wood Area Educ. Agency, 795 F.2d 52, 54 (8th Cir.1986). However, this preference is not absolute; thus, the IDEA authorizes placement in a private school at public expense when the nature and severity of the disability is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily. 20 U.S.C. § 1412(5)(B); Carl D., at 1058. To decide whether private placement is appropriate, "the court should determine whether the services which make the placement superior could be feasibly provided in a non-segregated setting. If they can, then placement in the segregated school would be inappropriate under the Act." Carl D., at 1058. Although parents seeking an alternative placement for their child may not be subject to the same mainstreaming requirements as a school board, "[n]onetheless, IDEA's requirement that an appropriate education be in the mainstream to the extent possible, see 20 U.S.C. § 1412(5)(B)(1994), remains a consideration that bears upon a parent's choice of *1160 an alternative placement and may be considered by the hearing officer in determining whether the placement was appropriate ...". M.S. v. Board of Education of the City School District of the City of Yonkers, 231 F.3d 96, 105 (2nd Cir.2000). Parents who choose a private school for their child which only offers a restrictive non-mainstream environment have the burden of proving that such an environment is needed to provide their child with an appropriate education. City of Yonkers, at 104.
After review of the record before this Court, the Court finds that a preponderance of the evidence supports the Hearing Panel's determination that Edgewood's program was inappropriate for Spencer (during the 1998-99 school year) because of its restrictive, disabled-only learning environment. Judy Goedeker-Sulz (day treatment therapist at Edgewood) testified that Spencer spent all of his time with children having similar problems as Spencer; i.e. poor social skills, anger management issues, aggressive behavior, and "behind academically". Tr.Vol. II:263-64.[18] She noted that the entire time Spencer was at Edgewood, he had numerous violent outbursts and aggressive behavior towards staff and classmates. He had to be physically restrained several times. Tr.Vol.II:269-70, 289. She opined that the major goal for Spencer during the 98-99 school year was to improve his social skills. Tr.Vol.II:296-97. She testified that Spencer should have appropriate non-disabled peer role models; however, she conceded that due to the restrictive environment at Edgewood, Spencer would have to use adults as his role models instead of his Edgewood peers. Tr.Vol.:316-17.
Spencer's teacher while at Edgewood, Alison Knaup, testified that the primary goal at Edgewood is to help children develop appropriate social skills. Tr.Vol.II:388, 408. Despite this goal, although Spencer had friends back in Bismarck, he was not able to make friends at Edgewood. She said that Spencer rarely chose to engage in any type of interactive play with his Edgewood classmates. Tr.Vol.II:388. She testified that Spencer engaged in solitary activities unless repeatedly prompted by her to interact with his classmates. Tr.Vol.:426. She also testified to regular demonstrations of aggressive behavior by Spencer in the classroom, and several incidents of violent behavior requiring physical restraint. Tr.Vol.II:376, 378-79, 380-82.
The Court agrees with the Hearing Panel that Edgewood's program lacked a mainstreaming component which made Spencer's placement in it inappropriate. There was no evidence at the hearing that Spencer would have opportunities to be regularly exposed to the more appropriate behaviors of non-disabled peers. Furthermore, the plaintiffs failed to show, by a preponderance of the evidence, that such a restrictive placement was necessary to provide Spencer with an appropriate education in light of the evidence that defendant could provide comparable instructional and behavioral strategies as Edgewood. At the conclusion of Spencer's previous diagnostic evaluation placement at Edgewood, Edgewood staff recommended a self-contained classroom for behavior disorders with a therapeutic component, including individual and group therapy. Ex.R-141:459(Resp. Exhibit List, Vol.II); Ex.P-698.[19] There was ample testimony at the hearing that defendant could provide *1161 the educational environment as recommended by Edgewood's evaluation staff. Tr.IV.:994-95; Tr.V.:1106; Tr.VI.:1306-09, 1386-88, 1430-31. Although, Spencer would receive his instructional and behavioral services in a self-contained classroom, educating Spencer in the same school with nondisabled children meets the main-streaming requirement of the IDEA. See, Grant Wood Area Educ. Agency, at 54. Since placement at a segregated facility is permissible only if the necessary services cannot be feasibly provided in a non-segregated setting, and the instructional and behavioral strategies recommended by Edgewood could be provided in a self-contained classroom with support services, the more restrictive placement of Spencer at Edgewood was inappropriate under the IDEA. See, Carl D., at 1058-59.
There was ample evidence before the Hearing Panel that the placement at Edgewood was inappropriate under the IDEA because it did not adequately balance Spencer's academic and emotional needs. The preponderance of the evidence before the Hearing Panel demonstrated that Edgewood's primary focus and primary goal with Spencer was behavior modification. Both Ms. Knaup and Ms. Goedeker-Sulz repeatedly testified that the primary focus of Edgewood is behavior modification and that the major goal for Spencer was to improve his social skills. Tr.Vol.II:295-97; 304; 408; 413-14; 472. This was reflected in Spencer's IEP plan (which was developed solely by Edgewood staff) which placed the first goal as improving Spencer's social skills, and the third goal as academic improvement. Tr. Vol.II: 408; 413-14; Ex.P-732, 734, and 736. Ms. Knaup, as Spencer's teacher at Edgewood, testified that "we are not getting a whole lot of academic subjects done", that "[a]cademically he has not made a whole lot of progress. He has made progress in other areas." Tr.Vol.II: 367-68; 375-77. For most of the school year, there were so many negative interactions in the classroom between the students (including with Spencer), that in March 1999, Ms. Knaup changed the physical format of the classroom to "work centers".[20] It was only after this changed, that Spencer's social interactions improvedincidents of aggressive behavior decreased. Tr.Vol.II: 369. However, Ms. Knaup characterized Spencer's overall academic progress during the 1998-99 school year as "stable"; "I think since he has been with us, I don't think he's lost a whole lot. I don't seehe is not blossoming. He is improving in baby steps academically." Tr.Vol.II: 468.
Interestingly, Ms. Knaup and Ms. Goedeker-Sulz, the two people at Edgewood who worked closely with Spencer during the 1998-99 school year, had very different perspectives as to Spencer's academic abilities. Ms. Knaup placed Spencer, at best, between 2nd and 3rd grade levels in most subjects[21]. Tr.Vol.II: 390, 404-406. Ms. Goedeker-Sulz had the impression that Spencer was somewhere around the first (1st) grade level; in fact, she believed that Spencer could not read at all[22]. Tr.Vol.II: *1162 301, 328. This significant discrepancy in perception as to Spencer's academic progress reflects the strong evidence before the Hearing Panel that education was not a principal focus for Edgewood. This fact is further evidenced by the fact that the 1998-99 school year was Ms. Knaup's first teaching job. Although certified in all areas of special education, she had no prior teaching experience with children, such as Spencer, diagnosed with serious behavior disorders. Although aware of the academic goals set out in Spencer's Edgewood IEP, she did not chart his progress in meeting these goals, instead relying only on her own perceptions. She had no standardized testing protocol in place for Spencer. Her curriculum did not include any textbooks; instead, she created work materials for Spencer based upon what her own 3rd and 4th grade nephews were learning in their school(s) and the Missouri "Show Me" standards. Tr.Vol.II.: 403-04; 489-503, 504. Furthermore, Edgewood's education program did not provide for a regular art class; and its music class consisted of a music teacher visiting once a week to work with two (2) children at a time.
More revealing about Spencer's 1998-99 school year at Edgewood is the overwhelming evidence that his negative behaviors increased. Defendant's academic records and testimony of Spencer's Bismarck teachers show that Spencer's behavior while enrolled with defendant was not nearly as disruptive or violent as it became while at Edgewood. Ms. Knaup and Ms. Goedeker-Sulz testified to numerous violent outbursts which at times became physically threatening to staff members. Spencer was physically restrained several times while at Edgewood during the 1998-99 school year. Tr.Vol.II.: 269-70; 289; 317-18; 323-24; 376; 378-79; 380-82; 475-76. This was in sharp contrast to the level of behavior problems shown by Spencer while enrolled with defendant. Tr.Vol.IV: 860-64; 868-70; 1013; 1019-1021; Tr.Vol.V: 1104-06; 1115-16; 1154-56; 1158; 1159-60; Tr.Vol. VI.: 1368; 1428-34.
The Hearing Panel further found that the placement at Edgewood during the 1998-99 school year was inappropriate because it removed Spencer from the support of his father and sibling(s). Plaintiffs do not address this finding of the Hearing Panel in their pleadings. Even so, there was an abundance of evidence that although Spencer was extremely attached to his mother, perhaps even to the point of a maladjusted attachment, he was extremely upset over being gone from his home, his neighborhood, his classmates at defendant's school, and the rest of his family. Undisputed evidence before the Hearing Panel showed that Spencer consistently voiced great concern over his removal from his family home and experienced separation anxiety while at Edgewood during both his diagnostic placement and the 1998-99 school year. Tr.Vol.I: 180-81; 192; 213-14; 227; Tr.Vol.II.: 326-27; Ex.R-124. This was a factor rightly considered by the Hearing Panel in its determination as to the appropriateness of the Edgewood placement.[23]
Essentially, the plaintiffs main point in overturning the Hearing Panel's decision is that the "[p]rofessionals who know Spencer best thought Spencer should be at Edgewood." Plaintiffs' Motion for Judgment on the Administrative Recordlegal memorandum in support, pg. 17. Dr. James Edwards believed this based upon Spencer's behavioral problems and in comparison to a proposed placement in Jefferson *1163 County's day treatment program. Ms. Knaup and Ms. Goedeker-Sulz voiced this opinion without much elaboration, and again, in comparison with the defendant's proposed placement in Jefferson County's day treatment program. These persons were primarily concerned with Spencer's behavior management issues, not his education. There is no evidence before this Court that the Hearing Panel arbitrarily failed to consider this testimony. The fact that the Hearing Panel rejected this testimony is entitled to due deference by this Court. The overwhelming evidence showed that Edgewood was clearly a more restrictive placement than necessary, failed to provide Spencer with the opportunity to interact with nondisabled peers and benefit from exposure to positive behaviors, emphasized improvement in social skills over academic progress, and removed Spencer from his home, family, and friends which bolstered Spencer's separation anxiety and manifested itself in an increase of aggressive and violent behavior by Spencer. The Hearing Panel correctly found that Edgewood was not an appropriate placement for Spencer during the 1998-99 school year and that the plaintiffs were not entitled to reimbursement for expenses and costs related to that placement. Next, the Hearing Panel found that Spencer was entitled to compensatory services for the last three (3) weeks of the 1997-98 school year when his IEP team agreed to terminate Spencer's homebound placement (prior to the expiration of the school year) but failed to consider Spencer's eligibility for extended school year (ESY) services during the summer of 1998. The Hearing Panel ordered such compensatory services be provided for eight (8) weeks in a self-contained classroom with a therapeutic component within the District. The Hearing Panel further ordered that upon completion of the compensatory services, Spencer's IEP team was to reconvene to "determine an appropriate placement".
Plaintiffs contend that the Hearing Panel erred in ordering compensatory services during the regular school day and within the District. They contend that Spencer should receive compensatory educational services outside the regular school day, outside of the regular school year, and in an educational setting other than that the defendant provides. Plaintiffs cite no caselaw in support of this argument, and furthermore, fail to cite any provision under the IDEA which would require implementation of these services as suggested by the plaintiffs.
Under the IDEA, the court "shall grant such relief as the court determines is appropriate." See, Birmingham v. Omaha School District, et. al., 220 F.3d 850, 856 (8th Cir.2000); 20 U.S.C. § 1415(i)(2)(B)(iii). The Eight Circuit Court of Appeals has held that money damages are not "appropriate relief" under the IDEA, Miener v. State of Missouri, 673 F.2d 969 (8th Cir.1982)(Miener I)[24]; however, such relief includes the provision of compensatory educational services, Miener v. State of Missouri, 800 F.2d 749, 754 (8th Cir.1986)(Miener II)[25]. *1164 The Miener II Court found that ordering compensatory educational services is appropriate relief under the IDEA for the denial of a FAPE because such relief is necessary to secure the child's right to a FAPE. Miener II, at 753-54. The Miener II Court found support for its decision by extending the Supreme Court's rationale in Burlington, supra[26]. The Miener II Court reasoned that a child is entitled to compensatory educational services "to replace the services the [school district was] obligated to provide" once it was proven that the child had been "denied ... a free appropriate education in violation of [the IDEA]." Miener II, at 756. Furthermore, like the retroactive reimbursement imposed on a school district in Burlington, supra, "imposing liability for compensatory educational services on the defendants `merely requires [them] to belatedly pay expenses that [they] should have paid all along.'" Miener II, at 753.
The Miener II decision left open the nature and extent of an award of compensatory educational services for the denial of a FAPE. A review of relevant caselaw among federal courts finds that such awards vary according to the facts and circumstances of a given case. Such an award may include an extended period of assistance beyond the statutory age of entitlement, see Pihl v. Massachusetts Dept. of Education, 9 F.3d 184 (1st Cir.1993), extra assistance in the form of tutoring, see Hall v. Detroit Public Schools, 823 F.Supp. 1377 (E.D.Mich.1993)[27], and summer school, see Johnson v. Bismarck Public School District, 949 F.2d 1000 (8th Cir.1991)[28].
Without any legal authority, the plaintiffs contend that defendant can only provide compensatory educational services to Spencer after school or during the summer. There is nothing in the IDEA which requires this specific form of compensatory educational services.[29] Plaintiffs further argue that such compensatory educational services must be provided in a setting other than within the District (presumably Edgewood or another private placement). For the defendant to provide compensatory educational services outside of the District, it would have to pay for such services. Under the rationale of Burlington and Miener II, compensatory education in the form of placement in a private school at public expense is appropriate relief where it is demonstrated that a FAPE is not possible in the public school and the *1165 desired private school placement for compensatory educational services is appropriate under the IDEA. See, Brantley, at 655.
Plaintiffs have not demonstrated that placement at Edgewood or some other "environment appropriate for Spencer's unique special education needs"[30] is appropriate under the IDEA. The grounds stated for finding Edgewood inappropriate for the provision of educational services during the 1998-99 school year are equally applicable to the provision of compensatory educational services at Edgewood. Furthermore, there was a preponderance of evidence that the provision of the compensatory educational services in a selfcontained placement with a therapeutic component in the District was "appropriate relief" under the IDEA.
Following the diagnostic evaluation of Spencer, Edgewood staff recommended a day treatment program which included a self-contained classroom for behavior disorders with a therapeutic component. Ex.P-617; Ex.R-141 at 459. It is apparent from the Hearing Panel's decision that after rejecting the Edgewood day treatment program and the Jefferson County day treatment program, the Hearing Panel considered the evidence of District staff that they could serve Spencer appropriately in a self-contained placement and provide the therapeutic component as recommended by Edgewood. Tr.Vol.V.: 1106, 1141-44; Tr.Vol.VI.: 1386-88, 1430-31. There is nothing before this Court which would cause this Court not to give due deference to the Hearing Panel's witness credibility determinations and weighing of the evidence before it. The Court finds that the Hearing Panel correctly determined that Spencer was entitled to the provision of compensatory educational services for a period of eight weeks in a selfcontained classroom with a therapeutic component within the District.
Finally, the defendant has requested the Court to consider additional evidence (# 27) and the plaintiffs have moved to strike Footnote 7 contained within and Exhibit A attached to the defendant's response to the plaintiffs' motion for judgment on the administrative record (# 36). The additional evidence (referenced by Footnote 7 and Exhibit A) consists of the testimony of defendant's Superintendent, Larry Weible, and Director of Special Services Ronda Davidson regarding conversations they had with Mrs. Reese during the latter part of the summer of 2000 concerning Spencer's re-enrollment with defendant. The additional evidence further consists of the results of the Woodcock-Johnson Psycho-educational Battery test. Defendant contends that Mr. Weible and Ms. Davidson could not have testified before the Hearing Panel since their employment with the defendant did not commence until the summer of 2000. Defendant further contends that the results of the Woodcock-Johnson Psycho-educational Battery test administered to Spencer on or about September 13, 2000 would conclusively show that Spencer had made no academic progress while at Edgewood. Plaintiffs contend that this evidence is cumulative and redundant of the evidence presented to the Hearing Panel.
The IDEA permits a court reviewing the administrative record to admit additional evidence at the request of a party. 20 U.S.C. § 1415(e)(2). However, "a party seeking to introduce additional evidence at the district court level must provide some solid justification for doing so." Independent School District No. 283 v. S.D., *1166 at 560; see also, Gill, at 1037 citing Independent School District No. 283; E.S. v. Independent School District No. 196, Rosemount-Apple Valley-Eagan, at 569. After careful review of the administrative record, and in light of this Court's findings, the Court finds that defendant has not provided the "solid justification" necessary to introduce the requested additional evidence.
The primary issue before this Court is whether the Hearing Panel erred in finding that the placement of Spencer at Edgewood during the 1998-99 school year was inappropriate under the IDEA. The conversations with Mrs. Reese over the summer of 2000 have no bearing on the issue of whether Spencer received any "educational benefit" while at Edgewood during the 1998-99 school year. Mrs. Reese had contacted the defendant because Spencer was being discharged from Edgewood on or about August 4, 2000 because of an incident of violent behavior perpetrated by Spencer against a staff member.[31] The fact that Spencer's discharge from Edgewood was being accelerated due to this incident is irrelevant to the issue of "educational benefit" and is simply cumulative evidence regarding Spencer's behavior problems. The administrative record already shows that Spencer suffers with a behavioral disorder which, at times, erupts into aggressive or violent behavior.
If Mrs. Reese and Spencer remained in St. Louis County and Spencer was enrolled in a St. Louis County school district, the Special School District of St. Louis would provide educational services to Spencer. However, Mrs. Reese was desirous of having Spencer return to the defendant and wanted the defendant to reconvene its IEP team to prepare a new IEP and propose a placement for Spencer. In order to do this, defendant required a academic re-evaluation of Spencer. The defendant administered the Woodcock-Johnson Psycho-educational Battery test to Spencer. Spencer tested out at the 2.2 grade level in reading, the 2.6-3.3 grade level in math, and the 1.5 grade level in written language (spelling, writing).[32] Defendant asserts that a comparison of these scores with similar testing of Spencer when he was a second grade student with defendant demonstrates that Spencer made no academic progress while at Edgewood.
Firstly, testing done in September 2000 does not necessarily indicate that Spencer received no educational benefit while at Edgewood during the 1998-99 school year. Testing done at the end of the 1998-99 school year would be a better indicator of educational progress during the 1998-99 school year than testing done two (2) years later. The test scores could be indicative of a recent regression not attributable to the education he received during the 1998-99 school year but rather to any number of outside factors, including changes in his family dynamics, change in classrooms or teacher, etc. Finally, the administrative record is already substantial as to the focus of Edgewood on behavior as opposed to education, and testimony as to Spencer's actual academic progress (or lack thereof) during the 1998-99 school year. The Court will deny the defendant's request for the Court to consider additional evidence and grant the plaintiffs' motion to strike.
In conclusion, the Court finds that the Hearing Panel weighed the conflicting opinions of all the behavioral and educational experts who had worked with *1167 Spencer in concluding that neither of the parties' proposed day treatment program placements were appropriate under the IDEA. There is nothing before this Court to suggest that the Hearing Panel improperly evaluated the evidence or failed to give sufficient weight to the views of professional educators in reaching its decision. See, Carl D. and Gail D. v. Special School District of St. Louis County, Missouri, at 1055. The Court further finds that under the IDEA the Hearing Panel correctly considered the "mainstreaming" element in determining the appropriateness of the Edgewood placement and believing that social interaction with nondisabled peers was necessary for Spencer's intellectual and behavioral development. The Court further finds that the Hearing Panel correctly considered the lack of a physical education facility in its determination of the appropriateness of the Edgewood placement, especially in light of Spencer's physical attributes. Finally, the Court finds that the Hearing Panel correctly considered the need of maintaining the family unit as a whole and keeping Spencer in familiar surroundings as paramount to his ability to progress academically and socially. The Hearing Panel's decision that the placement of Spencer at Edgewood for the 1998-99 school year was not appropriate under the IDEA, that the plaintiffs are not entitled to reimbursement of costs associated with their unilateral placement of Spencer at Edgewood for the 1998-99 school year, and that compensatory educational services (for a denial of a FAPE at the end of the 1997-98 school year and the subsequent summer) were to be provided by the defendant in a self-contained classroom with a therapeutic component within the District is supported by a preponderance of the evidence, consistent with the IDEA, and is entitled to deference by this Court.
Accordingly, the defendant's motion for judgment on the administrative record (# 23) will be granted, and the plaintiff's motion for judgment on the administrative record (# 26) will be denied.

ORDER
In accordance with the memorandum filed herein this date,
IT IS HEREBY ORDERED that defendant's motion for judgment on the administrative record, or in the alternative, for summary judgment (# 23) be and is GRANTED.
IT IS FURTHER ORDERED that the plaintiffs' motion for judgment on the administrative record (# 26) be and is DENIED.
IT IS FURTHER ORDERED that judgment be entered for the defendant and against the plaintiffs, and that the decision of the Hearing Panel denying reimbursement to the plaintiffs for the 1998-99 school year and directing the defendant to provide eight (8) weeks of compensatory educational services in a self-contained classroom with a therapeutic component within the home district be and is AFFIRMED.
IT IS FURTHER ORDERED that the defendant's request for the Court to consider additional evidence (# 27) be and is DENIED.
IT IS FINALLY ORDERED that the plaintiffs' motion to strike (# 36) be and is GRANTED.
NOTES
[1] Both motions were received by the Court in December 2000; however, due to this District's motion package rule and by agreement with the parties, the motions have been docketed as of October 2000. The administrative record in this case has only recently been filed with the Court.
[2] The parties have requested the Court to rule on the basis of the administrative record, which consists of the following materials: 1) the transcript of the entire due process hearing held before a three-member panel empaneled in accordance with applicable Missouri law; 2) exhibits and briefs submitted in conjunction with that hearing; and 3) the Hearing Panel's unanimous decision. Unless otherwise noted, the testimony referred to herein was received by the Hearing Panel at the due process hearing.
[3] When the Court refers to the "plaintiff" the reference is to Spencer; however, when the Court refers to the "plaintiffs", the reference is primarily to Spencer's parents.
[4] There is no dispute as to the plaintiff's disability. He is an extremely large child diagnosed with bipolar disorder, as well as a number of other emotional and learning problems. In addition, he has a history of violent and unpredictable behavior. Finally, he has been hospitalized in psychiatric facilities on a number of occasions. Plaintiff's Complaint, ¶¶ 1, 12, 13, 14, and 17; Plaintiff's Exhibit A Due Process Hearing Panel's Findings of Fact, Conclusions of Law, Decision, and Order, dated October 15, 1999.
[5] Plaintiff attended third grade, during the 1997-98 school year, for only three (3) days. He was removed unilaterally by his parents without prior notice to defendant.
[6] Edgewood Children's Center is a private mental health facility for children and adolescents located in St. Louis County.
[7] The issues for consideration by the panel, as raised by the plaintiff and his parents in their January 26, 1999 letter, is set forth in the panel's final decision and order. None of the parties dispute the accuracy of the recitation of the issues as set forth by the panel.
[8] Once again, these alleged procedural violations, as contained in the plaintiff's post-hearing brief before the hearing panel, are set forth in the panel's decision and order. None of the parties disputes the accuracy of these issues as set forth in that document.
[9] It appears that the panel determined that a FAPE had not been provided by the District to the plaintiff for the last three (3) weeks of the 1997-98 school year. Exhibit A, pg. 8.
[10] The Hearing Panel also made certain findings regarding alleged procedural violations raised by the plaintiffs in their post-hearing brief. Any dispute regarding the Hearing Panel's determinations regarding these alleged procedural violations was addressed by this Court in its May 4, 2000 order dismissing these claims for alleged procedural violations for failure to exhaust administrative remedies. See, Court Order #14.
[11] As previously noted, the phrase "free and appropriate public education" is often referred to as simply "FAPE".
[12] In Gill, supra, the Eighth Circuit addressed the issue of the "federal standard v. Missouri standard" when evaluating a special education program in Missouri. It found that the Court's previous application of the federal standard in Fort Zumwalt School District v. Clynes, 119 F.3d 607, 612-13 (8th Cir.1997) was binding precedent. However, it also noted that "[a]lthough Missouri courts have used the term `maximize the capabilities' of the child in dicta, no case has held that the legislature intended to require a higher standard of special education than the federal minimum." Gill, at 1036. Thus, the Court concluded that the test for evaluating a child's IEP (as to whether it provided a FAPE) was whether the IEP was sufficient to provide the child with some educational benefit. Gill, at 1036. Just recently, the Missouri Court of Appeals did address this issue and rejected the reasoning of the Gill Court and instead held that Missouri's standard for special education services was higher than the federal standard imposed under the IDEA, and that a due process hearing panel was required to consider both Missouri's standard for FAPE in addition to the federal standard imposed by the IDEA. Lagares v. Camdenton R-III School District, 68 S.W.3d 518 (Mo.App.2001). Less than two months after the Missouri Supreme Court let the Lagares decision stand (tranfer was denied), the Missouri General Assembly deleted from § 162.670 R.S.Mo. a declaration of state policy to provide special education services to all students with disabilities sufficient to meet their needs and maximize their capabilities. This section now comports with similar statutes in the majority of other states in that Missouri public schools must provide a FAPE which meets state and federal regulations implementing the IDEA. In light of the Missouri legislature's clear intent not to override the federal standard, this Court will adhere to the holdings of Gill and Clynes as to the applicable standard when evaluating the educational services provided to Spencer Reese.
[13] As previously noted, the phrase "individualized education plan(s)" is commonly referred to as simply "IEP(s)".
[14] In Missouri, the state administrative process mandated by the IDEA is governed by Missouri statute § 162.961 et seq.
[15] The IDEA was subject to revision as of December 19, 1999. However, the substantive portions dealing with administrative and judicial review remain unchanged except for different subsection numbers. For example, § 1415(e)(1) and (2) are now § 1415(i)(1)(A) and (I)(2)(A). See, IDEA Amendments of 1999, Pub.L. 106-25, § 6, 113 Stat. 49. However, since the events giving rise to the plaintiff's complaint occurred prior to the 1999 Amendment's effective date, the Court will consider the instant motion under the pre-1999 IDEA section numbers in order to avoid confusion. However, it must be noted that the Blackmon case cites to the post-1999 IDEA section numbers.
[16] When reference is made to Spencer being "in school", the reference is to defendant.
[17] In a footnote, the Supreme Court set out the specifics of 20 U.S.C. § 1401(a)(18). Presently, § 1401(a)(18) has been recodified as § 1401(8). As did § 1401(a)(18) before it, § 1401(8) defines "free appropriate public education" as "special education and related services that

(A) have been provided at public expense, under public supervision and direction, and without charge,
(B) meet the standards of the State educational agency,
(C) include an appropriate preschool, elementary, or secondary school education in the State involved, and
(D) are provided in conformity with the individualized education program ...".
[18] Reference to specific testimony at the hearing will be noted by the transcript volume and page number.
[19] The respondent/defendant Bismarck's exhibits are identified as "Ex.R", followed by the hearing exhibit number, and page number (as found in the bound volumes for Bismarck's exhibits). Plaintiffs' exhibits are identified as "Ex.P.", followed by the exhibit number. The plaintiffs' exhibits are not in bound volumes.
[20] "Work centers" are individualized academic workplaces set up around the perimeter of a classroom. The students go from work center to work center, usually at their own pace, to accomplish a variety of work assignments at each particular center. Generally, they cannot go to the next center until they have completed the work at the previous center.
[21] In the 1998-99 school year, Spencer would have been a fourth (4th) grade student.
[22] Ms. Knaup testified that Spencer was at the 2nd grade level in reading, a level that remained unchanged throughout the school year. Tr.Vol.II.: 390.
[23] The other findings by the Hearing Panel; i.e. travel time and lack of physical education facilities, are not raised as points of contention by the plaintiff. The Court assumes that these factors are not disputed.
[24] Actually Miener I, supra. held that money damages are not appropriate relief under the Education for All Handicapped Children Act (EAHCA), 20 U.S.C. § 1415(e)(2). The EAHCA is one of the predecessor statutes of the present IDEA. Both statutes contain identical damages provisions. See, Brantley v. Independent School District No. 625, St. Paul Public Schools, 936 F.Supp. 649, 654 n. 10 (D.Minn. 1996).
[25] Actually Miener II, supra. held that compensatory educational services are appropriate relief under the Education of the Handicapped Act (EHA) which is the successor statute to the EAHCA and the predecessor to the IDEA. For purposes of this lawsuit, the statutes may be considered identical.
[26] As noted previously, in Burlington, the Supreme Court held that reimbursement for expenses when a parent unilaterally places a child in a private school is appropriate relief under the IDEA provided that the public school's IEP for the child is inappropriate and the private school place was appropriate under the IDEA. The Supreme Court reasoned that such reimbursement was not "damages" but it "merely requires the Town to belatedly pay expenses that it should have paid all along and would have borne in the first instance had it developed a proper IEP." Burlington, 471 U.S. at 371, 105 S.Ct. 1996. To do otherwise would deny a child his or her's right to a "free appropriate public education" and thwart the IDEA's admonition for courts to grant "appropriate relief". Burlington, 471 U.S. at 369, 105 S.Ct. 1996.
[27] The provision of tutoring was part of a settlement agreement reached between the parents of a special education student and the student's school district; it was not court-ordered compensatory educational services.
[28] The provision of summer school was part of a consent agreement reached between the parties; it was not court-ordered compensatory educational services.
[29] But see, Manchester School District v. Christopher B., 807 F.Supp. 860, 869 (D.N.H. 1992)("... an award which requires a `local educational agency', 20 U.S.C. § 1401(a)(8), to provide a student education services during a period of time in which it is already obligated to provide that student a free appropriate education does not constitute an award of compensatory education under the Act.").
[30] Plaintiffs' Reply Memorandum in Support of their Motion for Judgment on the Administrative Record (# 38), pg. 15.
[31] According to the pleadings, Spencer had tried to choke a teacher and it required six (6) people to physically restrain him.
[32] At the time of this testing, Spencer would have completed fifth (5th) grade and contemplating enrollment with defendant as a sixth (6th) grader.